Good morning. May it please the Court, I'm Michael Nunez and I'm here for the appellants. As I've indicated in the briefing, there are eight principal issues that I advance for review this morning. I'd like to only address the first four issues on oral argument. They're the primary issues that I believe are dispositive, all issues in this appeal. And to focus the arguments even further, there are truly only two. By not addressing them, you're not waiving them. You're just highlighting the ones you want to talk to us about. Sure. Tell us what you think is important. Well, in a very tangible sense, there were only two overarching issues that the underlying district court decided upon, which was the foundation and basis for all its underlying dispositive motions, and ultimately the findings of facts and conclusions of law in those dispositive motions formed the basis for the issue of the permanent injunction. As a housekeeping matter, I do want to comment. I did put in my briefing that the July 20, 2010, order on setting aside a stipulation and order was requested to be reviewed. That, of course, was an order issued after the March 31st issuance of the injunction. That's not an order that I'm requesting review of. It wasn't a basis for the permanent injunction. On the issues of the existence of chamferty and maintenance as a tort in Nevada and whether Mojave required 645D licensing, the district court made it very clear that it was deciding these issues as pure issues of law and upon which it would receive no custom and practice expert opinion testimony and which it determined that the legislative history was not an impediment to its decisions. Those two factors and considerations formed the entire basis of the district court's ruling on the underlying dispositive motions. The foundations for the court's issuance of the permanent injunction was weak, and it required reaching back to the common law of England, which predated 1776, and applied a home inspector's certification scheme as it has never been applied before in the State of Nevada or in any State where home inspection has been codified. Were any of the facts and issues that were presented in opposition in support of the cross motions for summary judgment, were they considered by the district court? It would have, by necessity, have required the district court to deny the motions because there were genuine issues of material fact on such matters of what Mojave's business actually was that made it a competitor with Del Webb. I don't know what placards the homeowners actually saw and what their impressions or understanding was of the services provided by Mojave and whether the homeowners did not, did or did not believe that Mojave and Del Webb were affiliated. Those were all issues where there was clear homeowners' deposition testimony, presented deposition of the principles of Mojave's and their agents, and clearly genuine issues of material fact were presented. The judge didn't need to consider those factors for deciding as it decided. In its most distilled sense, Mojave transmitted information to homeowners. If that information was used in subsequent Chapter 40 construction defect claims, and if recovery was had from the builder based on that information, then Mojave would be paid for its expert services. Whether or not that occurred in all 600 inspections that occurred in this case is unknown because the court limited homeowner deposition discovery in the underlying case, and it probably would not have been possible to examine each circumstance where a home inspection occurred, what information was transmitted to the homeowners, and what formed the basis of their actions. So to paint in a very broad brush, to stop this activity, what Del Webb did was fashion a claim of chaperty and maintenance as a tort. The second aspect of the claim concerned false advertisement and misrepresentations. That's at the crux and the core of the Nevada Deceptive Trade Practices Act claim and the Lanham Act claim. But again, the problem in getting some theory on that basis that all 600 homeowners would agree to, it would have been almost an impossible task, and it would require actually speaking to the homeowners and taking evidence on the issue. So the sole issue and the sole basis for that claim is that you represented to these homeowners that you were properly licensed for your activity when you weren't, because you required this 645D inspection. I state in my briefing that this is somewhat analogous to a doctor providing services on a lien basis in a personal injury case. I think it's probably more sanctioned in our case because in Ms. Hobby's situation, there is an express statutory scheme under Chapter 40 for reimbursement of expert witnesses' service that are rendered. Kagan. Counsel, if we find that in fact your client did need to have the license, do you lose? Probably. I would have to agree with that. But the Court did look at that issue from multiple angles, and I think that there was a response to every single issue that the district court questioned in that scheme. First of all, if you look at the language of the statute, and if you apply a plain medium interpretation to the statute, the statute says that You're talking about 645D? Yes.  The statute says nothing at all about inspections for building code violations. It says nothing at all about inspections in connection with Chapter 40 claims and inspections. It has an express provision in Section 645.100 subsection C that expressly states that the certification statute does not apply in the case where inspections are for cost estimates. And what are these inspections for if they're not for identifying defects and for calling out supporting claims in subsequent Chapter 40 litigations? I understand that each of those issues has to be analyzed to figure out if the licensing requirement was indeed properly interpreted and applied. But if you do, let me expand a little bit on my question. If we do find that such a license was required and your client, it's undisputed, didn't have it, do you then lose under the misrepresentation-based causes of action as opposed to a champerty cause of action? Probably not on Lanham, because Lanham only referred to a single placard, and the Court has my briefing that that was only distributed within a community. It didn't affect interstate commerce. As a matter of fact, the district court agreed that it – there was no evidence presented in opposition to Mojave's summary judgment that it did not affect interstate commerce. And that – at that point, summary judgment should have been granted. What you'll see in the district court's order is that it states, no, you didn't carry your burden in disputing that court. But perhaps at trial, if you explore this issue of the Internet, explore if any contacts or information were obtained from that website, and then maybe you have a chance for proving your interstate commerce element. But that really is not the case. Who's under the Nevada misrepresentation statute? Well, that's an extremely limited claim. And if you go by the allegations of the complaint, it's only that they were supposed to have this license and they didn't. There were probably tribal issues of fact on that issue as well, because when the co-owners were questioned, they said, were you aware these people were licensed? Their answers were uniformly, yes. They were licensed, but that's really almost a trick question, because they were licensed as general contractors. They weren't licensed under the 645 certification scheme. So it might not be something that was material to them. It might not be an issue that would have ultimately affected their decisions. But the questions were almost baited questions. Would you have hired these people if you knew they weren't licensed? Answers were uniformly, no, of course not. With license that we're talking about, I think that that would have, by definition, inherently contained issues of fact. So in the end, perhaps if there was an ultimate determination that this licensing was required for this activity, maybe there would have been an uphill battle at the time of trial, but certainly a trial should have been had. I think the issues of champerty and maintenance are very well briefed in the briefings. I don't want to waste my time with talking about that. I don't think there's any question that this claim was brought as anything other than as a tort. I noticed some supplemental briefing filed this week that seemed to suggest that, well, notwithstanding that this may or may not be a tort if there's a public policy at issue, the district court was within its authority to issue a preliminary or permanent injunction. That case is quite distinguishable. In that case, it was a copyright infringement, a verifiable claim, an infringement, not champerty, a medieval claim. And also in that case, part of the court's basis and decision was that it was difficult or impossible to calculate damages. In our case, damages were calculated to the penny, and that's contained in Del Webb's 26 disclosure documents that's in the record, witnesses and documents, over $5 million in special damages, punitive damages, attorneys' fees. This was a tort. Judge Dawson, the district court, in ruling on the copycat suit that was filed in this case, acknowledged quite clearly in his ruling that in review of the 12 reported cases in Nevada's history that there was no recognition of that claim as an affirmative claim for relief. And it's been only recognized and treated as an affirmative defense to a contract claim. The case of Gruber, the 120-year-old case, 120 years ago it's acknowledged as an ancient doctrine. Today it can be ---- You talk about champerty, you're going to go back a ways. Yeah. I think Edward I was the one that was most prolific on the issue. Well, fortunately, the medieval punishments for champerty weren't evoked in this case. So I guess we should consider ourselves lucky. I refer the Court to Judge Dawson's decision. I think it was correct. I don't advance that it's certainly not controlling or binding on this Court. But it is persuasive authority. To the same extent, Del Webb submits another decision by our very same district judge that we're here on appeal for, Judge Jones, who, ruling on a motion for lack of jurisdiction, change of venue, pitches his champerty point again. In an affirmative defense context, no less. But he almost gives the pitch that you can also bring it to the court if you want. I don't think so. You have about three minutes left. Do you want to save some time for a bottle of water? Just real quickly, Your Honor, even Del Webb had some initial trepidation about this claim as it retained its own expert, Jeff Stemple of the University of Nevada Law School, to provide an expert report to the existence of the cause of action of the tort. That's the reason why we retain on rebuttal Robert Kerr to do his treaties on champerty and maintenance, which was provided in opposition to the motion for summary judgment. The 645D licensing, which I'm suspecting is going to be a central issue in this case, I think the testimony of Glenn Curtis, one of two master home inspectors in the state of Nevada, should have been considered. He certifies home inspectors in the state of Nevada. He knows what they can and cannot do. It should have been considered. Every other state that has enacted this very new profession, only in the 80s did the home inspection business come up, indicates that we don't check for building code violations. Even the legislative history acknowledges that there's going to be exceptions to the certification scheme, and it's only applicable to resale of homes. The guy that comes and checks the toilet and water heater and air conditioning, that's a home inspector. That's a 645D inspector.  Thank you, counsel. May it please the Court. David Frederick with me as Jennifer Braster. Lyle Sawyer and Collins on behalf of Del Webb Community. This case revolves around a series of unlawful and improper conduct that resulted in the creation of litigation for the sole purpose of earning a profit through the submission of expenses in that litigation. Now, counsel has talked about some aspects of that wrongful conduct, and I'll try to focus my arguments today on those aspects, recognizing that there are other matters as he referred to that are brief and on which, unless the Court has questions, I'll submit to the Court. Let's start with champerty and maintenance, because I think the answer here is relatively simple. Regardless of whether you go back several hundred years or whether you talk about it in recent terms, champerty and maintenance in Nevada is characterized as an offense. Now, an offense can be either civil or criminal. But if it's civil, it is a tort. That's point number one. Point number two, and I want to emphasize at the moment this is a point that is made at page 27 of our answering brief, because there was a suggestion that it might have been made just in supplemental briefing. I want to make certain the Court's aware of the fact that this was briefed to the Court as a part of the answering brief. And that is that the Nevada Supreme Court has repeatedly characterized champerty and maintenance as a violation of public policy. It has then, in other contexts, reached two conclusions that are relevant to the question of whether there can be an affirmative claim for champerty and maintenance. The first is that there can indeed be public policy torts. The recognition of that fact, combined with the fact that champerty and maintenance have been recognized as public policy violations, is what allows this Court to award affirmative relief. And the second point. Kagan. May I ask a question about that before you go on to your second point? Some of the cases that were cited make the analytical point that if you are looking at whether there continues to be a viable role for champerty as an affirmative source of recovery as a tort claim, that you would look to whether the State in question has enacted such statutory rights as abusive process designed to address some of the otherwise served by champerty and maintenance claims to see if there still is a common law claim for damages or injunctive relief for champerty and maintenance. And I checked, and Nevada does indeed have a statute for abusive process. Yes, it does. So what inference do we draw from that? Well, I don't think you do for this. You don't draw the inference that there is no affirmative claim for champerty and maintenance because abusive process in general covers procedural misconduct in the litigation. Champerty and maintenance talk about something else, and that is the third-party financing of litigation, third-party financing in which the third party has no connection whatsoever to the litigation. I do not know of any abusive process decision in Nevada, at least, that treats abusive process in a financing context. I think they're two different things. The other thing is that in some jurisdictions there have been statutes which have deliberately reversed the common law with respect to champerty and maintenance as a tort. Nevada has not done that. And it has repeatedly referred to the adoption of the English common law, not as it is now, but at the time of the American Declaration of Independence, at which time the English common law did recognize a claim, affirmative claim for champerty and maintenance. So that to the extent that you can draw anything from the both legislative and judicial history in Nevada, there has been no negation, to put it that way, of an affirmative claim for champerty and maintenance. So here's the question on remedy. Right now we just have the injunction in front of us, right? That is correct. You settle damages. I'm not quite sure how you get a tort or a claim for champerty transformed into an equitable, to allow you the equitable relief of an injunction. Champerty, you've got damages for champerty. I think you can also get an injunction, and I'll tell you why. This will get to the ticket. I'll try to get to that. What's your best case? One case together, I don't get there. Let me get the second point that I was going to make to Judge Rosenthal is the answer to your question, Judge Topper. Go right ahead. And that is that one of the things that the Nevada Supreme Court has recognized is that if you have conduct that violates public policy, you can enjoin it, even without damages. And the reason why I bring that up is precisely the question you raise, Judge Thomas, and that is, why do you get an injunction for champerty and maintenance? Because here the champerty and maintenance is the creation of litigation. And that's the principle difference between a lot of the arguments that have been made in various case law about the financing of litigation, expert witnesses, attorneys, contingent fees, and all this kind of thing. Here, the champerty and maintenance, together with the unlawful licensing, I hope to get to that in a moment, and the misrepresentations and deceptions that were involved that ended up interfering with Del Webb's performance of its contractual obligations, together with Mojave's signing up of law firms and or the initiation of Chapter 4 litigation itself. This is litigation that no homeowner had any idea of bringing before Mojave appeared on the scene with retainer agreements in its pockets for law firms. And the sole and only purpose of this entire endeavor was so that they could get their inspection report fees. Fees that went literally 300 percent when they got to the expense of litigation. And so, I understand your point. That's the injunction, Your Honor. Well, yes, but you do have damages. And part of the idea of an injunction is there is no adequate remedy at law. Tell me why, when you get damages for champerty, that's not an adequate remedy at law. Because it does not remedy the interference that Del Webb suffered with its goodwill and business reputation. One of the reasons why we allow injunctions against unlawful and illegal conduct that end up interfering with someone else's performance of their contractual obligations with their clients is because you can't calculate the monetary value of the damage that results from that kind of interference that goes on. As a reason, in combination with all of these other activities, and it's important to be kept in combination with all of these other activities for the simple reason that while one can parse out certain aspects of this, can, for example, attorneys issue letters saying, don't talk to anybody now that I represent you? Of course they can. Can they do it in the interests of a private party trying to recover their inspection fees without Del Webb doing it through its warranty process? No. Because that's a misuse of the financing aspects of litigation. Kagan. If we were to reverse the conclusion that champerty and maintenance provides an adequate basis for the injunction? Do you still succeed in keeping the injunction because of Lanham Act or Nevada State Consumer Statute violations? As well, I guess, the answer to your question is yes, as well as the illegal and unlawful inspection report process that went on here. Because you have to remember, these inspection reports then become the generating force for the remaining conduct. And that's why I mentioned before, you have to consider all of these various legal violations in combination with each other because they all contribute to the resulting champerty and maintenance, yes, interference with our contractual relations with our warranty holders, yes, and the remaining conduct upon which the district court based its injunction. It's not simply champerty and maintenance here. It's also the deceptive conduct. It's also the illegal conduct that starts the ball rolling. It's the whole sequence of events in the process. Let me talk about the unlawful conduct for a moment if I can. Nevada has enacted a very comprehensive licensing certification scheme for inspection of the inspection of structures, including residential homes. Now, key point for this Court, nowhere in that scheme does it say it's limited to residential home sales. Nowhere in that scheme is there an exception for somebody who believes, because they're a general contractor, that they're qualified to inspect for building code violations. Nowhere are there any of the kinds of limitations that counsel wants to try to impose upon the statute. Now, the statute is clear in that regard, so the Court doesn't have to get to the legislative history. But if it does, what it will find from that legislative history is that that very broad-based scope of the statute was deliberate. Because the problem was that people were being confronted by fly-by-night operations claiming to be in-home inspectors for whatever kind of purpose, whether it be real estate sales, whether it be Chapter 40 proceedings, whether it be for other reasons. So there are no limitations on that statute and no limitations on that statute for a rule. Now, Judge Rothenthal, you ask a question first of all about licensing, then you ask about misrepresentations. The misrepresentation here is not just simply the fact they didn't hold the license. What they cleverly did was in their flyers and in their various distributions, including ones on the Internet, what they would do would be they would talk about free inspection reports, they would talk about defects, et cetera, and then they would put  Well, the contract number that they were using was a general contractor's license. Never did they disclose at all that they were not licensed as home inspectors. So the licensing process is not simply illegal conduct in and of itself, it's also misrepresentations. And I'm interrupting only because I know your time's running down, but all that equates to a tort of misrepresentation. And, again, torts do not equate to injunctive relief. And that's all we're here about. I mean, it may be egregious, it may be wrong, it may be contrary to statute, but misrepresentation doesn't get you to an injunction. I don't think Champerty gets you to an injunction. You know, and we look. So what gets you to an injunction? The typical thing that gets you to the injunction is the inability to calculate monetary damages. And one of the reasons why that is extremely important in this case is because at the end of the line, whether you line up all of these things in a row, you end up with Del Webb being unable to deal with its homeowners in a way which preserved its goodwill and reputation and its warranty thing. And that's a breach of contract. If you want to put all of these things together, the second answer to your question, Judge Thomas, is the Cregan Industries case, which was cited in our brief, which points out because these events are violations of public policy, you can enjoin them without damages. And that's the answer to your question, Judge Thomas, is because of the fact that there is a public policy. But don't you find it curious that in going back to Blackstone and imported into the 13 colonies in all the States, there's not a single case in which an injunction has been, that I found that an injunction has been rendered in a Champerty case? I think, do I find it curious? Yes. Perhaps. Does that mean it can't be done? Or does that mean it would be improper to do it under Nevada law? I think the answer to those questions are no. And I may be repeating myself, but to line up the dots, the dots are very simple. You can go all the way back to Groovy. You can go back hundreds of years. Champerty is an offense. Champerty is an offense against public policy. To suggest that a court, Federal or State, is powerless to enjoin an offense against public policy, that I find rather startling. Thank you. Thank you, counsel. Any further questions? Thank you for your argument. I think the stretching, the musing, the academic debate that we've heard this morning about whether or not the tort exists and whether it can form the basis of an injunction means that Erie was violated. That's one of the issues I raise in my case, that this case was brought in Federal district court. It's not the place of the Federal judiciary to expand upon State law. That's a function reserved to the State court. Let me ask you the practical question. Why are you fighting the injunction? What does your client want to do? It's a liberty interest, Your Honor. He is in this field. I mean, do you want to keep going to Del Webb communities and sending out the flyers and doing inspections? He wants to continue earning his livelihood in his trade. He works with unions. He works with subcontractors in Nevada now. This is a cloud over his title. It's constantly brought up. It's constantly questioned that whether they sign up with him or work with him or ask him to do business, if he's going to be considered violating some injunction of the court or if he's going to be found to. Let me ask a follow-up question, if I may. Are you specifically challenging the part of the injunction that prohibits you from misrepresenting that or from representing that you're affiliated with Del Webb? Well, I think the language of the injunction is that he's to refrain from unlawful inspections. You know, that's a loaded term, you know. And when the court has defined it. But one basis was the finding that there was this representation as to affiliation, which was incorrect. Well, you know, it's just from the placard, though, Exhibit 3 to the complaint. It's a strained reading of that placard to state that he was affiliated with Del Webb. You know, and that was the problem again where, you know, facts be damned to a certain extent for the argument to be made that these actions were unlawful. They instigated litigation. In an adversarial context, Del Webb, in examining the Chapter 40 claims, agreed on average 30 percent of those defects were there and required repair, upwards of 80 percent in some instances. So to suggest that there's a public policy implicated here, when nobody's looked at the underlying basis of the claim, means that it's just the creation of litigation alone against the crown or barons or lords of influence. That's the offense that we're attacking here. Even England in 1967 drove a stake in that principle. And Your Honor is absolutely correct. Modern statutes of abusive process, Melissa's prosecution, are the vehicles to challenge  that. The district court denied that request to bring in the lawyers. If we're talking about frivolous prosecution, grant leave to amend to bring them in. And the court denied that request. I don't think the 645d statute on its face precludes the activity in this case. I do believe that there is support in the legislative history. Bernie Anderson stated that this scheme applies to the resale of residences. The 645d.100 subsection 6 states that this section doesn't apply to cost estimates. The Louisiana case of Wardell expressly acknowledged that, you know, this case is for limited purposes for resale of homes. It doesn't apply to, in that case it was warranty inspections to see whether property or real estate would fall under a home warranty program. It's targeted legislation. It's targeted regulation for a specific and new profession. If there's any further questions, I will submit. Well, just one. And I want to repeat Judge Rosenthal's question. And I wanted to get the order up so I know. Are you challenging the portion of the injunction, I'm going to read it to you, that prohibits your clients from acting as a, again, my screen is a little slow, as a representative or agent under the authority of Del Webb? No. And I don't think that that was ever suggested by that one placard. Thank you. The case is currently submitted for decision.
judges: Rosenthal, Fletcher B. , Thomas